IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUSAN KOLINEK, )
)
Plaintiff, )
)
vs. )
) No. 07 C 4265
STATE OF ILLINOIS DEPARTMENT OF )
HUMAN SERVICES, ) Suzanne B. Conlon, Judge
)
Defendant. )
)
)
)

## MEMORANDUM OPINION AND ORDER

Susan Kolinek brings this action against her employer, the Illinois Department of Human Services ("IDHS"), alleging discrimination (Count I) and retaliation (Count II) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* IDHS moves for summary judgment on both counts.

## BACKGROUND

Kolinek is a senior rehabilitation counselor at IDHS's Ford City East Field Office. IDHS Facts at ¶ 2. She is fluent in American sign language and counsels disabled IDHS customers to help them find jobs. *Id.* at ¶ 3; Kolinek Dep. at 13. Kolinek is the only counselor in her office able to communicate in sign language. IDHS Facts at ¶ 5.

Kolinek is hearing-impaired; she has limited ability to hear with a hearing aid and can read lips. IDHS Facts at ¶ 4; Kolinek Dep. at 13. She can also speak, although with an impediment. Kolinek Facts at ¶ 2; Kolinek Dep. at 13. Kolinek sometimes counsels hearing-

impaired high school students and their parents. When she meets with a hearing-impaired student who understands sign language and a parent who does not, Kolinek prefers to have a sign-language interpreter present so the parent will not "miss out" on what she is saying. IDHS Facts at ¶ 27; Kolinek Dep. at 25. But Kolinek has participated in meetings without an interpreter. IDHS Facts at ¶ 27; Kolinek Dep. at 24-25. Kolinek makes arrangements for interpreters when she wants them; IDHS simply pays for their services. IDHS Facts at ¶ 16-17.

Kim Pieczynski has supervised Kolinek since November 2001. *Id.* at ¶ 6. Pieczynski was a rehabilitation counselor for ten years before becoming a supervisor. *Id.* at ¶ 7. Fluent in sign language, Pieczynski worked with hearing-impaired clients. *Id.* at ¶¶ 7-8. Indeed, Pieczynski counseled Kolinek before Kolinek started working for IDHS. *Id.* at ¶ 8.

On May 11, 2005, Pieczynski received a call from Karen Steffan, the program coordinator for vocational and transitional services for the LaGrange Area Department of Special Education. IDHS Facts at ¶ 22. Steffan called to arrange a meeting at Hinsdale South High School that afternoon with a hearing-impaired student and her mother. *Id.* at ¶¶ 22, 24. The student was on the verge of graduation, her father had recently died, and she needed to determine how she could pay for college. *Id.* at ¶ 24. The student was fluent in sign language, but her mother was not. *Id.* at ¶ 23.

Around noon, Pieczynski explained the nature of the Hinsdale South meeting to Kolinek and asked her to attend. IDHS Response to Kolinek Facts at ¶ 8. Pieczynski characterized the meeting as an emergency. *Id.* Kolinek protested there was no emergency because the student had "a whole summer" to figure out how to pay for college. *Id.* Pieczynski declined to postpone

2

the meeting. *Id.* Kolinek told Pieczynski she would need an interpreter, but Pieczynski responded an interpreter was not necessary because the student was fluent in sign language. *Id.*[1]

Kolinek has occasionally arranged for an interpreter's services on less than 24 hours notice. IDHS Facts at ¶ 20. But arrangements for an interpreter usually must be made 24 hours in advance. Kolinek Facts at ¶ 11. IDHS has always paid for interpreters Kolinek hires on short notice. IDHS Facts at ¶ 20. Kolinek did not attempt to retain an interpreter for the Hinsdale South meeting. *Id.* at ¶ 28; Kolinek Dep. at 42.

Upon arriving at Hinsdale South, Kolinek had a verbal altercation with security guard Judith Miller. IDHS Facts at ¶ 29. According to Miller, Kolinek used profanity during this exchange. *Id.* at ¶ 30. Based on Miller's account, Pieczynski recommended Kolinek be disciplined for her part in the altercation. Kolinek Facts at ¶¶ 12-13; IDHS Response to Kolinek Facts at ¶¶ 12-13. On July 25, 2005, Kolinek received an oral reprimand for conduct unbecoming a state employee based on her alleged use of profanity in the Miller altercation. IDHS Facts at ¶ 37.

After her encounter with Miller, Kolinek attended the meeting. *Id.* at ¶ 31. Job coach Linda Daley also attended, along with the student, her mother, and Steffan. *Id.* Kolinek communicated with the student using sign language and with the mother verbally. *Id.* at ¶ 32.

---

[1] IDHS denies Kolinek expressed a need for an interpreter, citing to a few lines from Pieczynski's deposition. IDHS Response to Kolinek Facts at ¶ 8. But this citation is misleading; directly after the passage IDHS cites, Pieczynski admits she could not remember whether Kolinek asked for an interpreter during their conversation. Pieczynski Dep. at 89. IDHS does not counter Kolinek's description of her conversation with Pieczynski with a citation to any other evidence. IDHS Response to Kolinek Facts at ¶ 8. Kolinek's version of the conversation as described in her Rule 56.1 statement is deemed admitted.

3

Kolinek had no difficulty communicating with the student, and the mother never indicated she had trouble understanding Kolinek. *Id.* at ¶¶ 33-34.

Kolinek filed her first discrimination charge against IDHS with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on August 3, 2005. *Id.* at ¶ 10. She alleged IDHS discriminated against her by failing to provide an interpreter for the May 11, 2005 meeting and by issuing the June 25, 1005 oral reprimand. *Id.* Kolinek amended her charge on November 14, 2006, alleging IDHS had not provided her a new laptop computer from July 1 to November 14, 2006 due to her hearing impairment. *Id.* at ¶ 11.

Kolinek filed a second discrimination charge with the Illinois Department of Human Rights on April 20, 2007. *Id.* at ¶ 12. She alleged IDHS discriminated against her based on her hearing impairment by suspending her for allegedly falsifying time records on January 2, 2007 and retaliated against her for filing her first discrimination charge.

Kolinek received a July 18, 2007 right-to-sue letter for the claims in her first charge. Kolinek Response to IDHS Facts at ¶ 13. Kolinek claims she received a January 25, 2008 right-to-sue letter for the claims in her second charge. Kolinek Response to IDHS Facts at ¶ 13. Kolinek filed her complaint months earlier on July 30, 2007.

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must assume the truth of the nonmovant's evidence and draw reasonable inferences

4

in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But faced with a properly supported summary judgment motion, a nonmovant must affirmatively demonstrate the existence of a genuine issue of material fact. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

**II. Analysis**

**a. The April 20, 2007 Illinois Department of Human Rights Charge**

IDHS argues Kolinek cannot pursue claims enumerated in her second charge because she had no right to sue on those claims when she filed the complaint in this case. A plaintiff alleging ADA discrimination may only pursue claims explicitly mentioned in or "like or reasonably related to" an EEOC charge covered by a right-to-sue letter. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001); *Conner v. Ill. Dept. of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005); *Blalock v. Illinois Dept. of Human Services*, 349 F.Supp. 2d 1093, 1095 (N.D. Ill. 2004) (Bucklo, J.); *Meeker v. City of Chicago*, 97 C 8946, 1998 WL 341621, *2 (N.D. Ill. June 19, 1998) (Korcoras, J.). Because Kolinek did not receive a right-to-sue letter covering the claims in her April 2007 charge before she filed this complaint, she may not pursue her second administrative charge in this case. Nor is the conduct Kolinek describes in her second charge so closely related to the conduct alleged in her first charge that she may raise them in this case. While both involve Pieczynski, the second charge rests on discrete alleged facts.

Kolinek may only pursue claims enumerated in her first charge: (1) IDHS's alleged failure to accommodate her disability by denying her an interpreter for the Hinsdale South meeting (August 3, 2005 Charge, Kolinek Dep. Ex. 3); (2) the oral reprimand she received on June 25, 2005 (*Id.*); and (3) IDHS's failure to provide her with a new laptop between July 1,

2006 and November 14, 2006 (Nov. 14, 2006 Charge, Kolinek Dep., Ex. 4). Kolinek chose not to raise the last of the three issues in her complaint.

### b.    Failure to Provide an Interpreter

To defeat summary judgment, Kolinek must show the accommodation she requested was facially reasonable. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Under the ADA, an employer is only required to make an accommodation that is "reasonably possible in the circumstances." *Hoffman v. Caterpillar, Inc.*, 356 F.3d 568, 577 (7th Cir. 2001) (quoting *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996)). A reasonable accommodation may vary depending on the particular task at issue and the disabled employee's limitations. 29 C.F.R. § 1630.9. An accommodation "must be tailored to match the needs of the disabled individual with the needs of [her] job's essential functions." 29 C.F.R. pt. 1630, app.

Kolinek argues IDHS "den[ied]" her an interpreter's assistance for the Hinsdale South meeting. Response at 5. But that is not an accurate characterization of IDHS's conduct or the accommodation Kolinek requested. IDHS required Kolinek to attend the meeting on short notice, making it unlikely that she could arrange for an interpreter to assist her. The accommodation Kolinek proposed and IDHS denied was not providing an interpreter. It is undisputed that Kolinek arranged for her own interpreters, and IDHS has always paid for interpreters Kolinek hired on short notice. Rather, the issue is whether Pieczynski's refusal to postpone the meeting was reasonable. Kolinek proffers no evidence to show Pieczynski had the authority or ability to postpone the meeting. The parties dispute whether the meeting was an "emergency;" but the evidence suggests the matter was at least pressing: the student was

hearing-impaired, had recently lost her father, was about to graduate from high school, and still needed to determine how to finance her college education.

Under these circumstances, Pieczynski's refusal to request that the meeting be postponed was reasonable, as was her decision to ask Kolinek to attend. Kolinek was the only counselor available who knew sign language. Kolinek's disability did not prevent her from accomplishing the task Pieczynski asked her to perform. She is able to speak, read lips, and hear, albeit imperfectly, with a hearing aid. Kolinek prefers to have the assistance of an interpreter when she meets with a student who understands sign language and a parent who does not; but she can participate—and has participated—in meetings without an interpreter. Kolinek fails to proffer evidence to show her disability caused any problems during the meeting at issue. Kolinek prefers to have an interpreter present so that a parent will not "miss out" on what she is saying in sign language. But she communicated verbally with the mother, who never indicated she had trouble understanding Kolinek.

Kolinek asserts her altercation with Judith Miller was "caused solely" by the fact she was not accompanied by an interpreter. Response at 5. Kolinek provides no evidence to establish causality. Nor could the lack of an interpreter reasonably excuse Kolinek's alleged use of profanity.

In her brief, Kolinek suggests Pieczynski should have attended the meeting in Kolinek's stead. The ADA does not require an employer to spare a disabled employee essential job functions or to reassign her functions to another employee. 29 C.F.R. § 1630.2(o).

7

c.  **Oral Reprimand**

Kolinek contends IDHS violated the ADA by issuing the July 25, 2005 oral reprimand based on her "miscommunication" with Judith Miller. Response at 5. This argument is flawed. It is undisputed that Kolinek was disciplined for her alleged use of profanity during the Miller altercation. Because this reason has nothing to do with Kolinek's disability, the ADA does not apply. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1127 (7th Cir. 2006) (to prove disparate treatment under the ADA, a plaintiff must provide evidence to show her employer discriminated against her *based on her disability*).

Kolinek argues Pieczynski failed to conduct a thorough investigation of the Miller altercation before suggesting she be disciplined. The relevant consideration is whether IDHS's belief that Kolinek used profanity, well founded or not, motivated its disciplinary action. That fact is undisputed. Summary judgment is therefore appropriate.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 31, 2008